(11 P.3d 67)

No. 82,964

STATE OF KANSAS, *Appellee*, v. MARK JOHNSON, *Appellant*.

Opinion filed August 11, 2000.

*Rick Kittel*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Timothy J. Chambers*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before BEIER, P.J., RULON, J., and STEPHEN D. HILL, District Judge, assigned.

HILL, J.: Mark Johnson appeals his jury convictions for kidnapping, aggravated burglary, and two counts of aggravated assault. Johnson complains that the evidence at his trial was insufficient to support a conviction under all of the alternative means defined in our kidnapping statute. He also contends the trial judge showed partiality to the State by certain comments he made in front of the jury, thus depriving Johnson of his right to a fair trial. Finally, Johnson contends that jury misconduct denied him a fair trial. We affirm the convictions.

Mark Johnson shattered a window of an apartment occupied by his former girlfriend and a man. Johnson entered the room through the window, with his gun drawn. The man fled. Johnson then left with the woman after telling her he would shoot her if she did not come with him. In the light of this overwhelming evidence of kidnapping by means of "threat," was it harmless error for the court to include "deception" as an alternate means of kidnapping in the jury instructions at Johnson's trial?

A review of the facts is important in deciding this case. On September 28, 1998, Mark Johnson arrived at the apartment of his former girlfriend, Rayne Templeton, at the Quality Inn Motel in Hutchinson. With Templeton in her apartment was a man named Eddie Skinner.

Johnson knocked on the door, but Templeton would not allow him in. Johnson began yelling and telling Templeton to let him inside. Johnson produced a gun, pointed it at Skinner, and ordered him to open the door. Instead, Skinner ran into the bathroom to hide.

Templeton dialed 911 on the telephone and then left the phone off the hook. She and Skinner heard a loud crash and, at the trial, Templeton testified that she saw a large window had been broken, and Johnson was inside the apartment.

Johnson broke down the bathroom door. Skinner testified that Johnson then put a gun to his head and threatened to kill him before allowing him to leave.

Johnson then approached Templeton and said they were leaving. She and Johnson walked down to her vehicle, but Johnson could not locate the keys and they went back up to the apartment. After finding the keys, the two left in the car with Templeton driving and Johnson in the passenger seat. Skinner, by this time, had gone to the office of the motel and informed the manager. The manager notified the police. The police spotted the vehicle and apprehended Johnson after a high-speed chase.

Johnson was charged with one count of kidnapping contrary to K.S.A. 21-3420, one count of aggravated burglary in violation of K.S.A. 21-3716, and two counts of aggravated assault in violation of K.S.A. 21-3410.

Johnson was convicted by a jury on February 3, 1999, on all four counts. Following the verdict, Johnson's attorney was contacted by a juror who stated he was coerced by the other jurors into convicting Johnson on the kidnapping charge, but the juror stated he was not convinced Johnson was guilty. Johnson filed a motion for a new trial based on this juror's statements. He also claimed the crime of kidnapping had not been proved and asserted other various theories. The trial court denied the motion for a new trial.

The State charged Johnson with kidnapping Templeton by "force, threat or deception," which are all of the means listed in our kidnapping statute, K.S.A. 21-3420. The trial court included the same elements when drafting the jury instructions. The record reveals that there is ample evidence supporting the kidnapping conviction based upon threat. For example, a 911 tape admitted at trial records Johnson telling Templeton that if she does not go with him he will shoot her. The evidence of force is not as strong. But, Johnson focuses his argument on the lack of evidence of deception. There is no evidence that Johnson employed deception in his taking of Templeton.

Our Supreme Court in *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 (1994) (quoting *State v. Kitchen*, 110 Wash. 2d 403, 410, 756 P.2d 105 [1988]), stated:

" 'In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to *guilt* for the single crime charged. Unanimity is not required, however, as to the *means* by which the crime was committed so long as substantial evidence supports each alternative means. [Citations omitted.] In reviewing an alternative means case, the court must determine whether a rational trier of fact *could* have found each means of committing the crime proved beyond a reasonable doubt. [Citations omitted.]' "

Under the doctrine set out in *Timley*, the record must contain substantial competent evidence proving all three means charged in order to uphold a conviction for kidnapping.

Substantial evidence has been defined as " 'such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion.' " *State v. Wonders*, 263 Kan. 582, 589, 952 P.2d 1351 (1998) (quoting *State v. Haskins*, 262 Kan. 728, Syl. ¶ 1, 942 P.2d 16 [1997]). There is nothing in this case that we can construe as substantial evidence to support a conclusion that Johnson kidnapped Templeton by deception. Johnson's defense counsel, in his closing remarks, mentioned the theory, but those statements were not evidence. A fair reading of the record leads to the conclusion that Johnson kidnapped Templeton by pointing a gun at her and telling her that they had to leave. Whether Templeton went voluntarily at that time was a question for the jury.

Despite the language of *Timley*, courts of appeal have attained a degree of confidence in jury verdicts of guilt in cases where there is overwhelming evidence supporting the conviction under one of the alternative means. Those courts have concluded that it was harmless error in such cases for the trial court to instruct on all alternatives.

Our Supreme Court dealt with such a scenario in *State v. Grissom*, 251 Kan. 851, 840 P.2d 1142 (1992). The *Grissom* court held that a general verdict of first-degree murder could be upheld if there was sufficient evidence to convict the defendant of either first-degree premeditated murder or felony murder, and the State was not required to prove both. 251 Kan. at 891.

*Grissom* adopted the view taken by the United States Supreme Court in *Griffin v. United States*, 502 U.S. 46, 59-60, 116 L. Ed. 2d 371, 112 S. Ct. 466 (1991), with the following:

" 'Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors *are* well equipped to analyze the evidence [citation omitted] . . . .

" '[I]f the evidence is insufficient to support an alternative legal theory of liability, it would generally be preferable for the court to give an instruction removing that theory from the jury's consideration. The refusal to do so, however, does not provide an independent basis for reversing an otherwise valid conviction.' " 251 Kan. at 892.

A recent 10th Circuit Court of Appeals opinion involving convictions for various conspiracy and mail fraud charges ruled that it was harmless error under the facts of that case where the trial court submitted a properly defined, although factually unsupported, legal theory to the jury along with a properly supported basis of liability. See *United States v. Hanzlicek*, 187 F.3d 1228, 1236 (10th Cir. 1999).

This court, in *State v. Ice*, 27 Kan. App. 2d 1, 6, 997 P.2d 737 (2000), when pondering a rape conviction, after reviewing *Griffin*, concluded that, where one of the possible bases of conviction was neither unconstitutional nor illegal, but "merely unsupported by sufficient evidence," there is no constitutional problem with upholding the conviction. The *Ice* court distinguished its opinion from *Griffin* with the following:

"This case differs from those where there was strong evidence supporting one theory and none on another, such as in *Griffin*. In a *Griffin* situation, one can reasonably assume the jury did not behave capriciously and convict on a theory in which there was no evidence, when there was strong evidence supporting another theory." 27 Kan. App. 2d at 7.

The task before the jury in this case was to determine whether Johnson was guilty of kidnapping. One cannot tell from the verdict what the basis for that verdict is; however, under the cases cited above, this court can reasonably conclude the jury picked the basis of kidnapping by threat which is supported by overwhelming evi-

dence, rather than by means of force or deception for which there is little or no evidence. K.S.A. 60-261 defines harmless error as any error by a court which is not inconsistent with substantial justice. We conclude, therefore, that including the term "deception" as a means of kidnapping in the jury instructions in this case constitutes harmless error. In light of the overwhelming evidence of Johnson's guilt on the kidnapping charge, we can see no injustice done by this verdict.

Johnson complains about two statements made by the trial judge, which he claims prejudiced his right to a fair trial. The first instance occurred after the State finished its direct examination of Templeton. It was approximately 4:40 p.m., and both the prosecutor and the defense counsel indicated a desire to begin cross-examination the next day. The judge stated he wanted to begin the cross-examination immediately and went on to state, "I just hate to give counsel all night to think of questions to ask." This was stated within the hearing of the jury.

The second instance of alleged judicial misconduct occurred during the defense counsel's cross-examination of one of the police officers. It is here repeated:

"Q. [Mr. McCulloch] Okay. Again looking at that same report, fifth line—one, two, three, four, five—did you write she said she thought that's where all the blood had come from. He also had a cut on his leg and was not sure if he got that when he went through the window?

"A. [Detective Miller] I did write that.

"Q. That would indicate she did know he was injured?

"MR. CHAMBERS: I'm going to object to that. He's misquoting. But it's not when she knew it. She said she knew it later on and he's trying to indicate to the officer directly different than what he testified to.

"THE COURT: Read the statement again, Mr. McCulloch. It indicates, does it indicate when she noticed that?

"MR. MCCULLOCH: It, it does not. I'll withdraw this line of questioning.

"THE COURT: That's what you're trying to impart to this jury, obviously.

"MR. MCCULLOCH: Okay.

"THE COURT: But if it's not there, it's not there.

"MR. MCCULLOCH: Thank you, Your Honor."

Johnson argues that the first statement shows that the judge was partial to the prosecution and that the second incident accused

defense counsel of trying to mislead the jury. Johnson believes that these two comments indelibly marked the proceeding and denied him a fair trial.

Ill-advised judicial comments will result in reversal of convictions when they are so intrusive and damaging that, on appeal, no one could reasonably conclude that the defendant received a fair trial. Stated another way, when the comments by the court realistically could have changed the outcome of the trial, we will reverse. In *State v. Aikins*, 261 Kan. 346, Syl. ¶ 13, 932 P.2d 408 (1997), our Supreme Court stated:

> "Allegations of judicial misconduct during trial must be decided on the particular facts and circumstances surrounding such alleged misconduct. In order to warrant or require the granting of a new trial, it must affirmatively appear that the conduct was of such a nature that it prejudiced the substantial rights of the complaining party. A mere possibility of prejudice from a remark of the judge is not sufficient to overturn a verdict or judgment. If a proper and reasonable construction will render the remark unobjectionable, the remark is not prejudicial."

Johnson cites *State v. Hamilton*, 240 Kan. 539, 731 P.2d 863 (1987), to support his position. *Hamilton* reversed a conviction based on judicial misconduct. In *Hamilton*, the trial judge commented on the evidence, gave his opinion of the evidence, and admonished defense counsel about his manner of presenting his defense. For example, the trial judge in *Hamilton* stated, " 'I want the evidence to be kept straight on the basis of your questioning,' " and " *'let's don't plant germs that don't exist.'* " 240 Kan. at 543-44.

While the comments made by the trial judge in this case are somewhat similar to some of those made by the judge in *Hamilton*, it is clear that the judicial conduct in *Hamilton* was far more severe and damaging than the two simple remarks uttered by the trial judge in this case. In *Hamilton*, the trial judge interrupted the defense counsel at least seven times. Some of the trial judge's comments were combined with admonishments. Furthermore, the trial judge in *Hamilton* interrupted defense counsel several times without being prompted by any objection from the State. Also, when defense counsel would raise valid objections, the judge advised the State on how to ask the questions and would continue to comment

on the evidence. The trial judge's numerous, unwarranted intrusions forced the *Hamilton* court to reverse the convictions.

Another conviction reversed due to judicial misconduct is reported in *State v. Plunkett*, 257 Kan. 135, 891 P.2d 370 (1995). *Plunkett* involves judicial transgressions that were much worse than are present in this case. In *Plunkett* the case hinged on the credibility of certain witnesses, and the trial judge commented on their credibility. The outcome of the trial was obviously affected.

While the statements made by the trial judge in this case may not have been necessary or warranted, we do not believe they require a reversal of Johnson's convictions. They are only two small incidents that occurred over the course of a 3-day trial. Their impact was not likely to be great on this jury. Nothing in the judge's comments bears directly on the elements of the charges as they did in *Plunkett*.

In *State v. Chappell*, 26 Kan. App. 2d 275, 279, 987 P.2d 1114, *rev. denied* 268 Kan. 890 (1999), a close case, the credibility of the victim was a key issue and the trial judge commented on the victim's credibility. In such a close case, such an error could not be considered harmless. In contrast, this case is not particularly close. There was extensive testimony against Johnson from which the jury could reach a verdict of guilty apart from any action of the trial judge. With so much evidence incriminating Johnson, the comments complained about do not violate any of Johnson's trial rights. Further, we do not believe that the comments changed the results of the trial. See *State v. Donesay*, 265 Kan. 60, 88, 959 P.2d 862 (1998).

Finally, Johnson alleges there was juror misconduct supporting a new trial. The defendant bears the burden of proving juror misconduct. *State v. Macomber*, 244 Kan. 396, 408, 769 P.2d 621 (1989). Johnson does not describe any actual juror misconduct in this case; nor does he provide any examples of outside influences upon the jury. Johnson simply concludes that there was misconduct because of the statements made by one juror to the defense counsel that the rest of the jury persuaded him to vote guilty on the kidnapping charge.

We do not believe that Johnson has met his burden on this point. Such statements do not seem to us to be misconduct but are rather second thoughts. Furthermore, evidence of the juror's mental processes in arriving at his verdict is inadmissable under K.S.A. 60-441 and K.S.A. 60-444. See *State v. Franklin*, 264 Kan. 496, 498, 958 P.2d 611 (1998).

We find no abuse of discretion by the trial court in denying Johnson's motion for a new trial.

Affirmed.