(142 P.3d 739)
No. 94,758

STATE OF KANSAS, *Appellee,* v. WILLIE L. SMITH, *Appellant.*

Opinion filed September 15, 2006.

*Carl Folsom, III,* of Kansas Appellate Defender Office, for appellant.

*Boyd K. Isherwood,* assistant district attorney, *Nola Tedesco Foulston,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before HILL, P.J., ELLIOTT and GREEN, JJ.

GREEN, J.: Willie Smith appeals from his conviction at a jury trial of aggravated burglary in violation of K.S.A. 21-3716. In addition, Smith appeals from his sentences for aggravated burglary and robbery in violation of K.S.A. 21-3426. Smith raises seven issues on appeal. Nevertheless, only two of these issues warrant a detailed discussion. Smith contends that the prosecutor misstated the law during closing arguments and denied him a fair trial. The State concedes that Smith is entitled to a new trial on his aggravated burglary conviction due to the jury instructions and the prosecutor's comments during closing arguments. After thoroughly re-

viewing the jury instructions and the prosecutor's comments during closing argument, we determine that the jury was likely confused about the proper law to apply to the facts of this case concerning Smith's aggravated burglary charge. Therefore, we conclude that Smith is entitled to a new trial on the aggravated burglary charge. Next, Smith argues that the trial court erred in ordering reimbursement of fees to the Board of Indigents' Defense Services (BIDS). Because the trial court never considered on the record at the time of assessing BIDS fees Smith's financial resources or the nature of the burden that payment of the fees would impose, we vacate Smith's sentence for his robbery conviction and remand for resentencing in accordance with *State v. Robinson*, 281 Kan. 538, 132 P.3d 934 (2006). Accordingly, we affirm Smith's robbery conviction, reverse Smith's aggravated burglary conviction and remand for a new trial, and vacate the sentence for Smith's robbery conviction and remand for resentencing in accordance with *Robinson*.

During one late evening in February 2005, Nicole Granger knocked on the door of William Bircher, a 74-year-old man living alone in an apartment in Wichita, and asked to use his cell phone. Bircher had previously been introduced to Granger by another woman who cleaned his apartment. As a result of their meeting, Granger would regularly ask to use Bircher's cell phone and would borrow small amounts of money from him.

On the evening in question, Bircher allowed Granger in his apartment to use his cell phone. Granger was accompanied by a man who initially did not come inside the apartment with her. Granger indicated that the man was protecting her from her violent boyfriend. While Granger was inside the apartment using Bircher's cell phone, the man asked Bircher if he could use his bathroom. Bircher allowed the man to use his bathroom. According to Bircher, the man went inside the bathroom for a couple of minutes and flushed the toilet.

Bircher testified that when the man came out of the bathroom, came behind Bircher, grabbed him around the throat, and forced him to his knees. As the man held Bircher, Granger took Bircher's billfolds from his pockets. According to Bircher, he had approximately $3,000 in two billfolds in his pockets. After Granger took

his billfolds, she and the man left Bircher's apartment. Granger also took Bircher's cell phone with her. After the two left Bircher's apartment, Bircher walked to the Conoco station and called the police.

When the police came to Bircher's apartment to interview him, Bircher described the individuals who had taken his money as a white female and a male whom he thought was white. During their investigation of the case, police officers interviewed Smith, a black male. Smith confessed that he was the male who had accompanied Granger to Bircher's apartment.

According to Smith, Granger had spoken with him about robbing Bircher approximately 5 hours before the actual incident. Smith initially told Granger that he did not want anything to do with her plan. Nevertheless, Granger kept talking to Smith about her plan, and Smith finally agreed to go with Granger but told her that he would not participate in a robbery. Smith's version of the events was pretty consistent with that given by Bircher. Smith indicated that he and Granger went to Bircher's apartment, Granger went inside to use Bircher's cell phone, Smith later went inside to use the restroom, and Smith grabbed Bircher after Smith came out of the restroom. Although it seems that Smith did not tell the interviewing officers that he forced Bircher to his knees, Smith stated that he grabbed Bircher's arms and held them behind Bircher's back while Granger went through Bircher's pockets and removed his billfolds. Smith told the interviewing officers that Granger gave him $450, which he assumed was one-half of the money taken from Bircher.

Smith was charged with aggravated burglary in violation of K.S.A. 21-3716 and robbery in violation of K.S.A. 21-3426. The jury convicted Smith of both offenses. Smith was sentenced to concurrent sentences of 136 months for aggravated burglary and 34 months for robbery.

*Were Smith's convictions multiplicitous?*

First, Smith argues that his convictions for aggravated burglary and robbery were multiplicitous because the State used a single act of violence to prove an element of each crime. The determi-

nation of whether convictions are multiplicitous presents a question of law over which an appellate court's review is unlimited. *State v. Schoonover*, 281 Kan. 453, 462, 133 P.3d 48 (2006).

Our Supreme Court in *Schoonover*, 281 Kan. 453, Syl. ¶ 11, explained multiplicity as follows:

> "Multiplicity is the charging of a single offense in several counts of a complaint or information. The reason multiplicity must be considered is that it creates the potential for multiple punishments for a single offense in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights."

Holding that the same-elements test is to be used when a defendant's convictions are for violations of multiple statutes arising from the same course of conduct, our Supreme Court stated:

> "When a defendant is convicted of violations of multiple statutes arising from the same course of conduct, the test to determine whether the convictions violate § 10 of the Kansas Constitution Bill of Rights is the same-elements test: whether each offense requires proof of an element not necessary to prove the other offense. If so, the charges stemming from a single act are not multiplicitous and do not constitute a double jeopardy violation." 281 Kan. 453, Syl. ¶ 12.

In arguing that his convictions were multiplicitous, Smith, however, relies on the single act of violence test followed in *State v. Groves*, 278 Kan. 302, 95 P.3d 95 (2004). Smith maintains that the same physical act of force, the forcible holding of Bircher, was used to satisfy both the element of "remaining without authority" for aggravated burglary and the element of "taking by force" for robbery.

In *Schoonover*, however, our Supreme Court held that the single act of violence test would no longer be applied in Kansas to analyze multiplicity issues. 281 Kan. at 495. Our Supreme Court specifically disapproved of "any language in previous cases which utilized a single act of violence/merger rationale as the basis for holding that two convictions which were based upon different statutes were multiplicitous . . . ." 281 Kan. at 495. Our Supreme Court stated:

> "In cases where a defendant is convicted of violations of multiple statutes arising from the same course of conduct and the single act of violence/merger analysis has been applied, the results have been outcomes which cannot be reconciled with cases applying the same-elements test, lack of predictability as to outcome,

disparate analysis, broader protection than required by the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights, and circumvention of K.S.A. 2005 Supp. 21-3107. The single act of violence/ merger analysis will no longer be applied to analyze double jeopardy or multiplicity issues." 281 Kan. 453, Syl. ¶ 13.

Based on our Supreme Court's holding in *Schoonover*, Smith can no longer rely on the single act of violence test to argue that his convictions were multiplicitous. In determining whether Smith's convictions of robbery and aggravated burglary are multiplicitous, this court applies the same-elements test.

Under the same-elements test, Smith's convictions for robbery and aggravated burglary are not multiplicitous. Aggravated burglary requires proof that a defendant knowingly entered into or remained within a structure, which robbery does not. Robbery requires an actual taking by force or threat of bodily harm, which aggravated burglary does not. Because each offense requires proof of an element not necessary to prove the other offense, Smith's convictions were not multiplicitous.

*Was there sufficient evidence to support Smith's aggravated burglary conviction?*

Next, Smith contends that his conviction for aggravated burglary should be reversed because no rational factfinder could have found that he "entered into" or "remained within" Bircher's residence without authority.

" 'When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Kesselring*, 279 Kan. 671, 679, 112 P.3d 175 (2005).

To find Smith guilty of aggravated burglary, the jury was instructed that the following elements must be proven: (1) that Smith knowingly entered into or remained within Bircher's residence; (2) that Smith did so without authority; (3) that Smith did so with the intent to commit robbery therein; and (4) that this act occurred on or about February 4, 2005, in Sedgwick County.

Smith contends that the State presented no evidence that he lacked the authority to enter into or remain within Bircher's apartment. Smith maintains that the evidence shows only that Bircher invited Smith into his apartment after Smith requested to use Bircher's bathroom. Yet, it follows that if sufficient evidence existed on one of the two alternatives previously mentioned, Smith's sufficiency argument would fail.

Accordingly, citing *State v. Maxwell*, 234 Kan. 393, 672 P.2d 590 (1983), the State contends that there was sufficient evidence introduced at trial to convict Smith of aggravated burglary. In *Maxwell*, our Supreme Court held that an entry under the aggravated burglary statute is not authorized when it is obtained by fraud, deceit, or pretense:

"We hold that where the consent to enter any of the structures or vehicles listed in K.S.A. 21-3715 and 21-3716 is obtained by fraud, deceit or pretense the entry is not an authorized entry under the statute in that it is based on an erroneous or mistaken consent. Any such entry is unauthorized, and when accompanied by the requisite intent is sufficient to support a burglary or aggravated burglary conviction." 234 Kan. at 397.

Here, the evidence establishes that Granger gained entry to Bircher's apartment by asking to use Bircher's cell phone. Smith then gained entry to Bircher's apartment by obtaining permission to use the bathroom. Smith admitted that Granger had planned out a robbery hours before they went to Bircher's apartment. Shortly after Smith entered Bircher's apartment, he grabbed Bircher and held him while Granger went through Bircher's pockets and removed his billfolds. The evidence pointed to the fact that the consent for Smith to enter Bircher's apartment was obtained through fraud, deceit, or pretense.

In his brief, Smith states that our Supreme Court in *State v. Hall*, 270 Kan. 194, 14 P.3d 404 (2000), rejected the theory that an authorized entry can become unauthorized upon the commission of a felony or because intent to commit a felony was present at the time of entry. The facts of *Hall*, however, are far different from the facts of the instant case. In that case, Hall was convicted of three counts of burglary after he entered the stockroom of a K-Mart store on three separate occasions and took merchandise. On

appeal to this court in *State v. Hall*, 27 Kan. App. 2d 313, 3 P.3d 582 (2000), Hall argued that he could not be convicted of burglary because he entered K-Mart with K-Mart's consent and because the K-Mart stockroom was not a separate entity or building under the burglary statute. This court then framed the issue as follows:

"The consent of K-Mart extended to the members of the general public to enter the K-Mart building is for the purpose of shopping. As a member of the general public, Hall had the authority of K-Mart to enter the retail store building. Being inside the building with authority, did Hall's entry into the storeroom portion of the same building constitute a burglary under K.S.A. 21-3715?" 27 Kan. App. 2d at 315.

In addressing the above issue, this court distinguished *State v. Fondren*, 11 Kan. App. 2d 309, 721 P.2d 284, *rev. denied* 240 Kan. 805 (1986), where Fondren was convicted of aggravated burglary and theft after he had entered a public school building and taken a purse from a closet in an annex occupied by students. Fondren argued that the "unauthorized entry" element of aggravated burglary was not established because his entry into a public building during regular hours was authorized. This court upheld Fondren's conviction, noting that Fondren, a nonstudent, knowingly entered the school annex without express or implied authority with the intent to commit a theft. 11 Kan. App. 2d at 316. This court in *Hall* distinguished *Fondren* by noting that Fondren who was a nonstudent was not authorized to enter the school annex while Hall was authorized to enter the K-Mart building. 27 Kan. App. 2d at 315-16.

This court further noted that our Supreme Court in *State v. Harper*, 246 Kan. 14, 785 P.2d 1341 (1990), had rejected the "California rule" that a defendant's intent upon entry may render the entry unlawful under the burglary statute. *Hall*, 27 Kan. App. 2d at 316. Under the "California rule," any theft that occurs inside a building constitutes a burglary because no one would authorize entry into a building to commit theft. This court concluded that the defendant's entries into the storeroom of K-Mart, a public building in which he was authorized to enter, did not violate the burglary statute. Therefore, this court reversed the defendant's burglary convictions. 27 Kan. App. 2d at 316-19. Our Supreme

Court granted the State's petition for review and affirmed this court's decision. See *Hall*, 270 Kan. 194.

In *Hall*, the building that Hall entered was a K-Mart store, which was open to the public. The *Hall* court grounded its decision on the fact that no limitation had been placed upon the public's authority to enter or to remain in any part of the store. 270 Kan. at 196. On the other hand, in this case, the structure was an apartment. Bircher's apartment was not a public building where an express or implied invitation was extended to the general public. It was a residence. Granger and Smith could only gain the authority to enter Bircher's apartment through Bircher's invitation or consent. Here, Bircher's invitation to enter his apartment was specifically limited to Smith's use of the bathroom and Granger's use of the phone. Because both Granger's and Smith's requests were a pretext to gain entry into Bircher's apartment so that they could rob him, the entries were unlawful under *Maxwell*.

The facts of the instant case are similar to those in *Maxwell*. There, Maxwell participated in a robbery after he gained access to a couple's residence by telling the wife that he needed to speak with her husband, an antique dealer, about a watch. A man who accompanied Maxwell asked to use the bathroom and also asked for a drink of water. Once inside the residence, Maxwell and the man held the couple at knifepoint, threatened them, and tied them to a bed. Maxwell and the man then ransacked the residence stealing money and personal items. At a jury trial, Maxwell was convicted of aggravated burglary along with other crimes. On appeal to our Supreme Court, Maxwell argued that there was insufficient evidence to support his aggravated burglary conviction because he was voluntarily allowed in the residence. In addressing Maxwell's argument, our Supreme Court noted that Maxwell and his companion were allowed to enter the residence for the sole purpose of speaking with the husband about the watch. Nevertheless, it was clear that they intended to rob the couple "at the time they entered the house and gained entry by subterfuge." 234 Kan. at 397. Our Supreme Court then set forth the above-quoted rule that when the consent to enter is obtained by fraud, deceit, or pretense, such

entry is unauthorized and can support a conviction for burglary or aggravated burglary. 234 Kan. at 397.

Here, similar to *Maxwell*, the evidence established that Smith gained Bircher's consent to enter his apartment for the sole purpose of using his bathroom. Moreover, Granger gained consent to enter Bircher's apartment for the purpose of using his cell phone. Nevertheless, the evidence points to the fact that Granger and Smith intended to rob Bircher when they entered his apartment. Under the rule set forth in *Maxwell*, sufficient evidence existed for a rational factfinder to find that Smith "entered into" Bircher's apartment without authority.

*Was Smith denied a fair trial when the State failed to elect in the jury instructions whether Smith "entered into" or "remained within" the victim's residence without authority?*

Alternative to the argument raised in the previous issue, Smith contends that he was denied a fair trial when the State failed to elect in the aggravated burglary jury instruction whether he "entered into" or "remained within" Bircher's residence without authority. Smith argues that no rational factfinder could have found each of these alternative means beyond a reasonable doubt.

Here, the jury was instructed that the following elements must be proven for aggravated burglary: (1) that Smith knowingly *entered into or remained within* Bircher's residence; (2) that Smith did so without authority; (3) that Smith did so with the intent to commit robbery therein; and (4) that this act occurred on or about February 4, 2005, in Sedgwick County.

Here, the jury was instructed that the single offense of aggravated burglary may be committed in more than one way, that is, "entering into" or "remaining within" without authority. This case presents an alternative means case. See *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 (1994). In such a case, " 'there must be jury unanimity as to *guilt* for the single crime charged. Unanimity is not required, however, as to the *means* by which the crime was committed so long as substantial evidence supports each alternative means. [Citations omitted.]' " *Timley*, 255 Kan. at 289 (quoting *State v. Kitchen*, 110 Wash. 2d 403, 410, 756 P.2d 105 [1988]).

This rule set forth in *Timley* has since been modified in *State v. Dixon*, 279 Kan. 563, 112 P.3d 883 (2005). In *Dixon*, our Supreme Court held that the defendant's burglary convictions could stand despite the absence of evidence sufficient to support each theory of burglary on which the jury was instructed. Because there was strong evidence supporting at least one theory of each burglary charge and no evidence of at least one other theory, our Supreme Court determined that the burglary jury instruction was harmless. 279 Kan. at 604-06. In making this decision, our Supreme Court followed *State v. Grissom*, 251 Kan. 851, 892, 840 P.2d 1142 (1992), where it had stated:

" ' " '[I]f the evidence is insufficient to support an alternative legal theory of liability, it would generally be preferable for the court to give an instruction removing that theory from the jury's consideration. The refusal to do so, however, does not provide an independent basis for reversing an otherwise valid conviction.' " ' [Citation omitted.]" 279 Kan. at 605.

This language in *Grissom* was cited in *State v. Johnson*, 27 Kan. App. 2d 921, 925, 11 P.3d 67, *rev. denied* 270 Kan. 901 (2000), which was also referred to in *Dixon*. 279 Kan. at 604-06. In *Johnson*, 27 Kan. App. 2d 921, Syl. ¶ 2, this court stated that appellate courts "have attained a degree of confidence in jury verdicts of guilt in cases where there is overwhelming evidence supporting the conviction under one of the alternative means. In such cases it is harmless error for the trial court to instruct on all alternatives."

In the previous issue, we have concluded that there was sufficient evidence to support the alternative means of Smith "entering into" Bircher's apartment without authority. Smith argues and the State concedes, however, that the "remaining within" alternative was not supported by the evidence. Even so, the State points out that based on the holding in *Dixon*, the fact that a jury has been presented with two alternative means of committing a crime where one alternative has no evidence to support it does not entitle a defendant to reversal when the conviction would find adequate support in the other theory of criminal liability.

*Did the prosecutor's closing argument combined with the jury instructions merit a new trial for aggravated burglary?*

Next, Smith argues that the prosecutor misstated the law during closing arguments and denied him a fair trial. Moreover, the State concedes that Smith is entitled to a new trial on his aggravated burglary conviction due to the jury instructions and the prosecutor's comments. The State admits that the jury instruction on aggravated burglary was likely to cause juror confusion: (1) because the "remained within" alternative was not removed from the instruction when it was not factually supported by the evidence; and (2) because no special instruction based on the rule in *Maxwell* regarding the "entered into" alternative was given to the jury.

The State points to the following comments made by the prosecutor during the rebuttal portion of closing argument as contributing to the possible juror confusion:

"In the second paragraph of the element instruction it says that the defendant entered into or remained. It says or. So yes, there was authority to enter into the apartment, but there was no authority to remain in the apartment to commit the theft. So you have to read that, that they have authority to enter, if you have authority to remain. And nowhere was there any authority for the male to remain in the apartment. The defendant, in his own confession, says he went into the apartment in order to commit the robbery. So do not forget that. It's very important."

The prosecutor in this case focused the jury on the "remaining within" alternative of the aggravated burglary instruction. The prosecutor then made the statement that "there was no authority to remain in the apartment to commit the theft." The prosecutor continued by telling the jury that Smith admitted that he went into the apartment to commit the theft.

The State points out that the prosecutor's statement could be considered a misstatement of law. In *State v. Johnson*, 266 Kan. 322, 333, 970 P.2d 990 (1998), our Supreme Court held that "[t]he element of intent to commit a felony or theft is separate and distinct from that of entry without authority." Thus, the mere fact that a defendant intended to commit a felony upon entry does not establish that the entry was unauthorized. For example, in *State v. Harper*, 246 Kan. 14, Syl. ¶ 4, our Supreme Court held that the

authority for an employee to enter the employer's place of business was not negated by the fact that the employee's entry was made for an unlawful purpose.

Evidence of Smith's intent upon entering Bircher's apartment was relevant in this case to show that he had actually gained entry under the pretense of using the restroom. Thus, Smith's entry was actually unauthorized. Nevertheless, the prosecutor had specifically told the jury that the entry was authorized. The prosecutor never told the jury about the rule in *Maxwell*. Unfortunately, the Kansas Judicial Council Advisory Committee on Criminal Jury Instructions has not developed an instruction for unlawful entry when a person obtains entry into a residence by fraud, deceit, or pretense. Under *Maxwell*, such an instruction would be consistent with the current status of the law in this area.

In this case, the prosecutor's misstatement was not cured by the jury instructions. Without an instruction on the rule announced in *Maxwell*, the jury was likely confused about the proper law to apply to the facts of this case. Therefore, Smith's aggravated burglary conviction is reversed, and his case is remanded for a new trial on the aggravated burglary charge.

*Did the trial court err in ordering reimbursement of BIDS fees?*

Next, Smith alleges that the trial court erred in ordering him to reimburse the Board of Indigents' Defense Services for attorney fees without considering his ability to pay, the financial burden that payment would impose, and the validity of the fees. Smith's argument requires interpretation of K.S.A. 2005 Supp. 22-4513. Interpretation of a statute is a question of law over which an appellate court's review is unlimited. *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003).

In *State v. Robinson*, 281 Kan. 538, Syl. ¶ 1, 132 P.3d 934 (2006), our Supreme Court held: "A sentencing court assessing fees to reimburse the Board of Indigents' Defense Services under K.S.A. 2005 Supp. 22-4513 must consider on the record at the time of assessment the financial resources of the defendant and the nature of the burden that payment of the fees will impose."

Here, at the sentencing hearing, the trial court ordered Smith to reimburse the Board of Indigents' Defense Services $1,700 in attorney fees plus a $100 administrative fee. The trial court never considered on the record at the time of assessing these fees Smith's financial resources or the nature of the burden that payment of the fees would impose. Therefore, in accordance with *Robinson*, we remand for resentencing with directions for the trial court to comply with K.S.A. 2005 Supp. 22-4513 concerning the reimbursement of fees to the Board of Indigents' Defense Services.

*Did the trial court err in using Smith's prior convictions to increase his sentence?*

Next, Smith contends that the trial court violated his constitutional rights, as outlined in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), when it used his prior convictions to increase his sentence without including the convictions in the complaint and submitting them to a jury for proof beyond a reasonable doubt. An attack on the constitutionality of the Kansas Sentencing Guidelines Act sentencing grid involves a question of law over which an appellate court has unlimited review. See *State v. Ivory*, 273 Kan. 44, 46, 41 P.3d 781 (2002).

Smith concedes that this issue has been decided by our Supreme Court. In *Ivory*, 273 Kan. at 46-48, our Supreme Court determined that *Apprendi* did not require a defendant's criminal history to be included in a complaint or proven beyond a reasonable doubt to a jury. This court is duty bound to follow our Supreme Court precedent, absent some indication that the court is departing from its previous position. *State v. Singleton*, 33 Kan. App. 2d 478, 488, 104 P.3d 424 (2005). Because there has been no indication that our Supreme Court is departing from its position in *Ivory*, Smith's argument fails.

*Was there cumulative error?*

Finally, Smith argues that the combination of errors in this case deprived him of his right to a fair trial. "Multiple trial errors may require reversal of a defendant's conviction if the cumulative effect of the errors substantially prejudiced the defendant and denied

him a fair trial. No prejudicial error may be found if the evidence against the defendant was overwhelming. [Citation omitted.]" *State v. Schoonover*, 281 Kan. 453, 518-19, 133 P.3d 48 (2006). Based on the above analysis, it appears that there was reversible error based on the prosecutor's comments and jury instructions on Smith's aggravated battery charge. Therefore, it is unnecessary to conduct a cumulative error analysis.

Based on the above analysis, we affirm Smith's robbery conviction, and we reverse and remand for a new trial on Smith's aggravated burglary conviction. In addition, we vacate Smith's sentence on his robbery conviction and remand for resentencing in accordance with *Robinson*.

Affirmed in part, reversed in part, sentence vacated in part, and case remanded.