(270 P.3d 1206)
No. 104,356

STATE OF KANSAS, *Appellee*, v. JOSHUA MITCHELL CLARY, *Appellant*.

Opinion filed February 17, 2012.

*Michelle Davis*, of Kansas Appellate Defender Office, for appellant.

*Michael Gayoso, Jr.*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., GREEN and BUSER, JJ.

PIERRON, J.: Joshua Clary appeals from his jury trial convictions of aggravated kidnapping, rape, and criminal threat. On appeal, Clary argues that (1) the State failed to present sufficient evidence to support a unanimous jury decision for alternative means involving the victim and another under the trial court's jury instructions for aggravated kidnapping; (2) the trial court erred by denying his request for a mistrial based on witness testimony presented by the State; and (3) the trial court erred by denying his request for jury instructions on the lesser included offenses of kidnapping and criminal restraint.

Clary lived with his girlfriend, E.H., at an apartment complex in Pittsburg, Kansas. On June 2, 2009, at approximately 6 a.m., E.H. awoke to discover that Clary was on top of her and had a box cutter pressed against her face. At trial, she testified that Clary told her that he was "going to cut her fucking eyes out."

An altercation between E.H. and Clary ensued that lasted for several hours. E.H testified that Clary called her several profane names, punched her, and slapped her. At trial, E.H.'s neighbor stated she could hear screams and yells from E.H.'s apartment. E.H.'s neighbor also testified that she heard Clary tell E.H. that

he was "going to kill her." During the altercation, E.H. tried to defend herself and attempted to escape from the bedroom but was unable to do so.

Sometime during the altercation, Clary left the bedroom. E.H. testified Clary told her not to leave. She testified she did not leave the bedroom because she was afraid and did not know where Clary was. After approximately 30 minutes, Clary returned to the bedroom with a knife and a phone. Clary ordered her to take off her clothes. He then ordered her to get on the bed. E.H. testified that Clary climbed on top of her, placed the knife against her skin, and inserted his penis into her vagina. E.H. testified she told Clary to stop on several occasions and that he was hurting her. After the intercourse, the fighting between E.H. and Clary continued.

At approximately 11:56 a.m., E.H.'s mother, who also resided at the apartment complex, knocked on E.H.'s door. Clary answered the door. While Clary spoke to E.H.'s mother at the entrance to the apartment, E.H. escaped the apartment by walking beneath Clary's arms and going out the front door. E.H. went to her mother's apartment and locked herself in the bathroom.

Later that day, E.H. went to the hospital where the hospital staff conducted a rape examination. While at the hospital, E.H. also spoke with two law enforcement officers and told them what had happened.

On June 3, 2009, the State charged Clary with aggravated kidnapping, rape, aggravated assault, and criminal threat. Clary's case proceeded to a trial by jury. The jury found Clary guilty of aggravated kidnapping, rape, and criminal threat.

Clary timely filed a notice of appeal from his convictions.

The first issue we consider is whether the State failed to present sufficient evidence to support a unanimous jury decision for the aggravated kidnapping charge.

Before consideration of the arguments advanced by Clary, we must first consider the State's argument that this issue is not properly before the court because Clary has raised it for the first time on appeal. To support this argument, the State cites the general rule that appellants cannot raise new issues for the first time on appeal. *See State v. Williams*, 275 Kan. 284, 288, 64 P.3d 353

(2003) (issue not presented to the lower court will not be considered on appeal).

The State, however, cites no authority for the specific proposition that a challenge to the sufficiency of the evidence before the trial court is necessary to preserve it for appeal. "There is no requirement that a criminal defendant challenge the sufficiency of the evidence before the trial court in order to preserve [it] for appeal." *State v. Farmer*, 285 Kan. 541, Syl. ¶ 1, 175 P.3d 221 (2008). Consequently, this issue is properly before us.

Clary argues the evidence was insufficient to convict for aggravated kidnapping. As will be explained below, Clary's argument assumes this is an alternative means case. A jury is instructed on alternative means when " 'a single offense may be committed in more than one way.' " *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 (1994) (quoting *State v. Kitchen*, 110 Wash. 2d 403, 410, 756 P.2d 105 [1988]). If so, "there must be jury unanimity as to the crime charged, but not as to the particular means by which the crime was committed, so long as substantial evidence supports each means." *State v. Wright*, 290 Kan. 194, Syl. ¶ 2, 224 P.3d 1159 (2010).

The trial court instructed the jury "each of the following claims must be proved":

"1. That the defendant took or confined [E.H.] by force or threat;
"2. That it was done with the intent to hold such person:
   to inflict bodily injury or to terrorize the victim, or another;
"3. That bodily harm was inflicted upon [E.H.]; and
"4. That this act occurred on or about the 2nd day of June, 2009, in Crawford County, Kansas.
"The State claims distinct multiple acts which each could separately constitute the crime of Aggravated Kidnapping. In order for the defendant to be found guilty of Aggravated Kidnapping, you must unanimously agree upon the same underlying act."

This instruction was consistent with the aggravated kidnapping statute (K.S.A. 21-3421), which defines that crime as kidnapping (K.S.A. 21-3420) "when bodily harm is inflicted upon the person kidnapped." Kidnapping is defined as "taking or confining of any person, accomplished by force, threat or deception, with the intent

to hold such person" for one or more separately listed reasons. K.S.A. 21-3420. These reasons are listed in four separate subsections classified as K.S.A. 21-3420(a) through (d). Only subsection (c) relating to the intent "to inflict bodily injury or to terrorize the victim or another," K.S.A. 21-3420(c), was instructed on the present case. No other subsection was referenced in the instructions or relevant to the facts of this case.

Clary notes there was no evidence he intended to inflict bodily injury upon or to terrorize "another." The State concedes the point, claiming it "never argued or intended to argue that [Clary] inflicted bodily injury or terrorized anyone but the victim in this case," *i.e.*, E.H. So if the reference to "another" in the jury instructions established an alternative means, we must reverse for insufficient evidence. See *Wright*, 290 Kan. at 204-06. Our review is unlimited. See *State v. Stevens*, 285 Kan. 307, 314, 172 P.3d 570 (2007); *State v. Kesselring*, 279 Kan. 671, 678, 112 P.3d 175 (2005).

We do not believe the reference to "another" established an alternative means. Even if Clary had intended to harm another, the means were the same—by inflicting bodily injury or terror. So including "another" in the instruction did not create more than one way to commit aggravated kidnapping.

If Clary were correct, E.H.'s status as victim would *also* be a way to commit aggravated kidnapping. But E.H. was not the means of the crime, she was its target. To hold otherwise would change the ordinary meaning of "means" and "way."

We find support for our holding in Washington's alternative means law, which our Supreme Court cited in *Timley* and also more recently in *State v. Becker*, 290 Kan. 842, 854-55, 235 P.3d 424 (2010). In *State v. Peterson*, 168 Wash. 2d 763, 768, 230 P.3d 588 (2010), a defendant failed to register as a sex offender under a statute which "sets forth various time limits for registration, depending on the offender's residential status." The defendant argued "the various deadlines and entities with which an offender must register represent alternative means of committing the crime." 168 Wash. 2d at 769. The Supreme Court of Washington thought this "too simplistic a depiction of an alternative means crime," and it illustrated the point by comparison with theft:

"The alternative means available to accomplish theft describe *distinct acts* that amount to the same crime. That is, one can accomplish theft by wrongfully exerting control over someone's property or by deceiving someone to give up their property. In each alternative, the offender takes something that does not belong to him, but his *conduct* varies significantly. In contrast, the failure to register statute contemplates *a single act* that amounts to failure to register: the offender moves without alerting the appropriate authority. His conduct is the same—he either moves without notice or he does not. The fact that different deadlines may apply, depending on the offender's residential status, does not change the nature of the criminal act: moving without registering." 168 Wash. 2d at 770.

Here as well, the instruction's reference to "another" did not describe distinct acts. Clary's conduct was the same whether his intended target was E.H. or another. "The mere use of a disjunctive in a statute does not an alternative means crime make." 168 Wash. 2d at 770.

Thus the inclusion of "another" in the jury instruction was surplusage. Given the record before us, we are confident the jury was not confused. Since Clary does not challenge the evidence showing his intent to inflict bodily injury upon or to terrorize E.H., his conviction was supported by sufficient substantial competent evidence. See *State v. McCaslin*, 291 Kan. 697, 710-11, 245 P.3d 1030 (2011).

We are not persuaded by the dissent's citations to *State v. Turbeville*, 235 Kan. 993, 686 P.2d 138 (1984), *State v. Crane*, 260 Kan. 208, 918 P.2d 1256 (1996), and *State v. Johnson*, 27 Kan. App. 2d 921, 11 P.3d 67, *rev. denied* 270 Kan. 901 (2000). As acknowledged by the dissent, *Turbeville* was not an alternative means case. Moreover, unlike the present case which only dealt with one statutory subsection—K.S.A. 21-3420(c), *Turbeville* concerned a jury instruction "taken from K.S.A. 21-3420(b) and (c) which define separate elements of kidnapping." 235 Kan. at 997. We acknowledge that alternative means may be implicated in a case where the jury is instructed on two or more separate subsections of K.S.A. 21-3420. But that is not the situation here, where only one subsection was at issue.

*Crane* is an alternative means case, wherein the defendant "was charged under subsection (b) or, in the alternative, subsection (c)" of K.S.A. 21-3420. 260 Kan. at 230. Once again, in the present case

we are dealing with only one, not two or more alternative subsections of the kidnapping statute. We reiterate that where alternate subsections of K.S.A. 21-3420 are instructed on, alternative means may be present, but that is not the situation here.

Finally, *Johnson* was an alternative means case which addressed the question: In the light of the overwhelming evidence of kidnapping by means of threat, was it harmless error for the court to include deception as an alternate means of kidnapping in the jury instructions? 27 Kan. App. 2d at 925-26. At the outset, none of the subsections of K.S.A. 21-3420 were at issue, and the opinion does not discuss which subsections of K.S.A. 21-3420 were stated in the jury instructions. Moreover, the *Johnson* court employed a harmless error analysis where one means was "supported by overwhelming evidence" and the other means had "little or no evidence." 27 Kan. App. 2d at 925-26. Contrary to the dissent's assertion, our reasoning is not similar to *Johnson* (which was effectively overruled by *Wright*, 290 Kan. at 207), because we believe there was no error—harmless or reversible—in the mere mention of "another" in the jury instruction. Quite simply, the word "another" was surplusage; it did not create an alternative means of committing kidnapping.

Next Clary argues the trial court erred by denying his motion for a mistrial. Specifically, Clary maintains that witness testimony from E.H.'s mother violated his constitutional right to a fair trial. The relevant portion of the testimony reads as follows:

"Q. [THE STATE]: Okay. After [E.H.] told you [that she was raped], what did you do?

"A. [WITNESS]: I said [E.H.], you have to go to the hospital.

"Q: Did she want to go to the hospital?

"A: At first she was scared.

"Q: Why was she scared to go to the hospital?

"A: She was scared because I told her I said the police will be notified, you know, and she says mom, he will come after me. I said it doesn't matter, [E.H.], I said I'm here, you can stay here. . . . [S]he finally agreed to go.

"Q: Okay. How did you get her convinced to go?

"A: I told her I said if you—I said if you don't do it, he can do it to somebody else, [E.H.], and it could be even worse. I said you've got—

"[DEFENSE COUNSEL]: I'm going to object, Judge, this is not relevant.

"THE COURT: Sustained.

. . . .
    "[DEFENSE COUNSEL]: I need a conference."

At the bench conference, defense counsel argued that Clary was entitled to a mistrial because the witness' statement—that Clary would rape someone else unless E.H. went to the hospital—prejudiced the jury. Even though the trial court stated that it was "concerned with the witness' testimony," the judge denied defense counsel's request for a mistrial and stated:

"I am concerned with this witness' last statement that she told the victim if she didn't go to the hospital, that he might do it to someone else even worse.

"Now, that was not—that was somewhat— that was not a response to a question that [the State] asked. The witness volunteered that information; however, I do recognize that that testimony is problematic. If you want me to—. . . .

. . . .
"If you want me to, [I will] instruct the jury to disregard that comment made by the witness."

Defense counsel agreed that the trial court should instruct the jury to disregard the witness' comment. Therefore, the judge stated, "All right ladies and gentlemen, please disregard the witness' last answer. It shall not enter into your deliberations in any way, shape or form."

Clary asserts on appeal that "this type of inflammatory and damaging testimony cannot be undone, requiring the court to declare a mistrial in order to protect [his] right to a fair trial." In contrast, the State contends that Clary has failed to meet his burden of showing that the witness' testimony was so prejudicial as to be incurable.

On appeal, a trial court's decision denying a motion for mistrial is reviewed under an abuse of discretion standard. Judicial discretion is abused if the judicial decision is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) is based on an error of fact. *State v. Ward,* 292 Kan. 541, 550, 256 P.3d 801 (2011). In evaluating a motion for mistrial, the trial court must use a two-step analysis. First, the court must decide if there is some fundamental failure of the proceeding. Second, if a failure has occurred, the trial court must then assess whether it is possible to continue the trial without an injustice; in other words, the trial

court must decide if the damaging effect of the prejudicial conduct can be removed or mitigated by an admonition or instruction to the jury. 292 Kan. at 550.

"To determine whether an error makes it impossible to proceed with the trial without injustice, a trial court must assess whether the fundamental failure affected a party's substantial rights, which means it will or did affect the outcome of the trial in light of the entire record." 292 Kan. at 569. If the fundamental failure does infringe upon a right guaranteed by the United States Constitution, the trial court should apply the constitutional harmless error analysis defined in *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 87 S. Ct. 1283 (1967). Therefore, the error may be declared harmless where the party benefitting from the error proves beyond a reasonable doubt that the error complained of will not, or did not, affect the outcome of the trial in light of the entire record, *i.e.,* proves there is no reasonable possibility that the error affected the verdict. *Ward,* 292 Kan. at 569.

Regardless of whether the error is constitutional, one factor to be considered is whether any damage caused by the error can be or was removed or mitigated by admonition, instruction, or other curative action. 292 Kan. at 569-70. An appellate court reviewing the second step for an injustice will review the entire record and use the same analysis, applying *Chapman* when the nature of the right allegedly affected is constitutional in nature. *Ward,* 292 Kan. at 570.

Applying this two-step test, we must first determine whether the trial court erred by ruling that the testimony of E.H.'s mother was not a fundamental failure in the trial. Again, the trial court will have abused its discretion if we determine the trial court's ruling was (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. See *State v. Gonzalez,* 290 Kan. 747, 755-56, 234 P.3d 1 (2010).

Clary's argument implies that there was a fundamental failure in his trial and the trial court's determination was based on an error of law that failed to recognize an infringement on his presumption of innocence and right to a fair trial, which is a fundamental con-

stitutional right guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. See *Estelle v. Williams,* 425 U.S. 501, 503, 96 S. Ct. 1691, 48 L. Ed. 2d 126, *reh. denied* 426 U.S. 954 (1976) (quoting "[t]he presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice."). "The presumption of innocence is founded on the principle that 'one accused of a crime is entitled to have guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial.' [Citations omitted.]" *Ward,* 292 Kan. at 570-71.

In this case, the trial court did not abuse its discretion by ruling that the testimony of E.H.'s mother did not constitute a fundamental failure in the trial. The court listened to defense counsel's argument concerning the witness' testimony and questioned the State about the witness' testimony. The State declared that E.H.'s mother had given a different answer in the past when asked how she convinced E.H. to go to the hospital. The State informed the court that it was unaware that E.H.'s mother would answer in the way that she did.

Even though the trial court sustained the defense's objection and stated that "how [E.H.'s mother] convinced [E.H.] to go to the hospital [was] absolutely irrelevant," the court did not feel the witness' testimony required the granting of a mistrial. The court's actions were not arbitrary, fanciful, or unreasonable, nor were they based on an error of law or fact. Moreover, the trial judge sustained the defense's objection and agreed to give an admonition to the jury to disregard the witness' testimony. Because one factor to be considered by us is—whether any damage caused by the error can be or was removed or mitigated by admonition, instruction, or other curative action—the trial court's admonition to the jury further supports a ruling that there was no fundamental failure of the proceeding. See *Ward,* 292 Kan. at 569-70.

We must also determine whether the error was harmless. "Again, under this standard, the error may be declared harmless where the State, as the party benefitting from the error, proves

beyond a reasonable doubt that the error complained of did not affect substantial rights, meaning there is not a reasonable possibility that the error contributed to the verdict obtained." 292 Kan. at 578.

Here, the State has met its burden of proof beyond a reasonable doubt that E.H.'s mother's testimony did not affect the outcome of the trial. In this case, E.H. gave extensive detailed testimony at trial. Moreover, her testimony was corroborated by other witnesses at trial. Even though her description of events, as relayed to the other witnesses was not identical, the multiple-day trial supports the conclusion that E.H.'s mother's testimony did not affect the outcome. The record on appeal contains hundreds of pages of witness testimony. Here, the strength of the evidence against Clary weighs against a finding of prejudice. Consequently, we find that E.H.'s mother's testimony did not affect the outcome of the trial.

Clary finally maintains that the trial court erred by denying his lesser included offense jury instruction request. In particular, he argues that the trial court should have granted his request for lesser included instructions on kidnapping and criminal restraint for his aggravated kidnapping charge. On the other hand, the State asserts that Clary was not entitled to lesser included instructions because Clary failed to present an alternative theory to the charge. The State declares: "[Clary] provided no alterative theories to the incident other than it did not occur. The analysis under the facts of this case is simple; either the jury believes that this defendant committed the acts or they acquit him. This leaves no room for lesser included offenses."

"When a defendant has requested a lesser included instruction at trial, the standard of review for failing to so instruct is whether the evidence, when viewed in the light most favorable to the defendant, supported the instruction. The instruction need not have been given if the evidence would not have permitted a rational factfinder to find the defendant guilty beyond a reasonable doubt of the lesser included offense." *State v. Jones*, 279 Kan. 395, Syl. ¶ 1, 109 P.3d 1158 (2005). Whether a crime is a lesser included offense of another is a question of law over which this court has

unlimited review. *State v. Gallegos*, 286 Kan. 869, 873, 190 P.3d 226 (2008).

A trial court shall instruct the jury on lesser included offenses where there is some evidence that would reasonably justify a conviction of the lesser included offense. K.S.A. 22-3414(3); See *State v. Kirkpatrick*, 286 Kan. 329, 334, 184 P.3d 247 (2008). This duty to instruct applies even if the evidence is weak, inconclusive, and consists solely of the defendant's testimony. 286 Kan. at 334; see *State v. Berry*, 292 Kan. 493, Syl. ¶¶ 2-6, 254 P.3d 1276 (2011) (overruling precedent and utilizing K.S.A. 22-3414(3) to analyze lesser included offense instructions in felony murder cases).

Here, the evidence would not have permitted a rational factfinder to find Clary guilty beyond a reasonable doubt of the lesser included offenses, *i.e.*, kidnapping and criminal restraint. One of the crimes Clary was charged with in this case was aggravated kidnapping. Clary asserts that "[k]idnapping and criminal restraint are lesser included offenses of aggravated kidnapping." Clary's assertion is correct. See *State v. Simmons*, 282 Kan. 728, 742, 148 P.3d 525 (2006) (kidnapping and criminal restraint are lesser included offenses of aggravated kidnapping). But Clary's argument that the trial court should have instructed on kidnapping and criminal restraint because the jury could have convicted him of these lesser crimes based on the evidence is misplaced. To prove that Clary committed aggravated kidnapping, the State's burden was to show that he confined E.H., accomplished by force or threat, with the intent to hold her to facilitate the commission of any crime—*e.g.*, rape—and that Clary inflicted bodily harm upon E.H.. See K.S.A. 21-3420; K.S.A. 21-3421.

There was overwhelming evidence to show that Clary had caused bodily harm to E.H. Indeed, E.H., her mother, the examining nurse, and multiple law enforcement officers all testified that E.H. had suffered bodily injury consisting of bruises, scratches, and abrasions. Moreover, our Supreme Court has held that forcible rape itself constitutes bodily harm. *State v. Brown*, 181 Kan. 375, 389, 312 P.2d 832 (1957).

On appeal, Clary does not dispute that E.H. suffered bodily harm. He merely argues there was evidence to support the lesser

included offenses. Clary's defense theory, however, was that he did not commit the crimes. During the jury instruction conference, Clary specifically noted that E.H.'s injuries could have come from her previous altercation with her ex-husband and the jury could have believed that Clary had not raped E.H. Given the evidence, the jury had the opportunity either to believe Clary and acquit or to believe the incriminating evidence and find Clary guilty of the aggravated crimes.

The trial judge reached a similar conclusion:

"THE COURT: Well, but should the jury decide to believe, as you indicate, any number of things, then they could acquit on a given charge and convict on a different charge. In fact, we tell them that in the jury instruction that tells them each count is to be considered separately.

"[DEFENSE COUNSEL]: Sure.

"THE COURT: I didn't really hear anything that would—from an evidentiary perspective that would tell me that a lesser included is appropriate. It seems like it—they would believe it happened or it didn't. There has not been a—an alternative presented to the jury for them to hang their hat on with regard to any lesser included."

The trial court's reasoning was correct.

The evidence at trial does not support the argument that the lesser included offense instructions should have been given. Lesser included offense instructions were not warranted because the jury could not have reasonably convicted Clary of the lesser offenses. Consequently, we find the trial court did not err by refusing to give the instructions for kidnapping and criminal restraint.

Affirmed.

\* \* \*

GREEN, J., dissenting: I respectfully dissent from that part of the majority opinion which holds that the inclusion of "or another" in the jury instruction did not enumerate another way (or an alternative means) of committing a single offense of kidnapping. Clary maintains that "[t]he [S]tate failed to present sufficient evidence that [he] took or confined E.H. with the intent to hold her to terrorize another." And the State concedes in its brief that it did not present any evidence on the alternative means of "to terrorize

another", stating: "It is abundantly clear from the record that the State never argued or intended to argue that [Clary] inflicted bodily injury or terrorized anyone but the victim in this case. The State's sole purpose of using '. . . or another' was based on the required statutory language contained within K.S.A. 21-3420(c) and PIK [Crim.] 3d 56.25."

The majority concedes that if the reference of "to terrorize another" in the jury instruction established an alternative means, Clary's conviction for aggravated kidnapping must be reversed for insufficient evidence. See *State v. Wright*, 290 Kan. 194, 204-06, 224 P.3d 1159 (2010). Nevertheless, the majority says that the reference of "to terrorize another" in the jury instruction did not establish an alternative means. The statement by the majority is at variance with the disjuncts contained in the Kansas kidnapping statute, K.S.A. 21-3420. That statute states as follows:

"Kidnapping is the taking or confining of a person, accomplished by force, threat or deception, with the intent to hold such person;

"(a) For ransom, or as a shield or hostage;

"(b) to facilitate flight or the commission of any crime;

"(c) to inflict bodily injury or to terrorize the victim or another; or

"(d) to interfere with the performance of any governmental or political function."

To satisfy aggravated kidnapping, the State must also show that there was bodily harm inflicted upon the person kidnapped. See K.S.A. 21-3421.

K.S.A. 21-3420(c) states that a person can be guilty of kidnapping if he or she confines someone with the intent "to inflict bodily injury or to terrorize the victim or another." Thus, use of the phrase "to terrorize the victim or another" in K.S.A. 21-3420(c) furnishes two ways to commit the crime of kidnapping: (1) to terrorize the victim or (2) to terrorize another. And this reasoning is further supported by *State v. Turbeville*, 235 Kan. 993, 686 P.2d 138 (1984).

In *Turbeville*, a man later identified as James C. Turbeville entered a TV rental store, pulled out a handgun, and ordered the two store employees, Corjon Fournier and Art Butler, into an adjacent office in the store. Then Turbeville shot Butler several times. But-

ler fell across the legs of Fournier who was already lying on the floor; Turbeville then fled the store. Turbeville was convicted by a jury of attempted murder, aggravated battery, unlawful possession of a firearm, kidnapping, and aggravated kidnapping.

On appeal, Turbeville complained that "the instructions [given at trial] broadened the scope of the charges alleged in the complaint by adding the *alternative intents* 'to terrorize another' [under K.S.A. 21-3420(c)] and 'to facilitate flight' [under K.S.A. 21-3420(b)] to the kidnapping charge." (Emphasis added.) 235 Kan. at 997. The *Turbeville* court acknowledged that the instructions on the charges of kidnapping and aggravated kidnapping were broader than how those offenses were charged in the information. Nevertheless, in determining that Turbeville's substantial rights were not prejudiced by the error, the *Turbeville* court stated:

"The language contained in the instructions was taken from K.S.A. 21-3420(*b*) '[to facilitate flight or the commission of any crime' and (*c*) '[t]o inflict bodily injury or to terrorize the victim or another' which define the separate types of intent by which the taking or confining may have been committed. From the facts presented at trial, the instructions as given were entirely supported by the evidence." 235 Kan. at 998.

Obviously, the *Turbeville* language is an apt description of an alternative means situation: where the underlying statute is one which merely enumerates one or more ways of committing a single offense. See *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 (1994) (" 'In an alternative means case . . . a single offense may be committed in more than one way.' ").

The case of *Turbeville* leaves no doubt that the crime of kidnapping may be committed in more than one way: "The language contained in the court's instruction did not charge an additional crime, but stated several methods, or in this case different types of intent under (*b*) or (*c*), by which the kidnappings could be committed." 235 Kan. at 998. Clearly, the *Turbeville* court acknowledged that the disjuncts under subsections (b) or (c) of K.S.A. 21-3420 enumerated more than one way (or means) of committing a single offense of kidnapping.

In *Turbeville*, the State presented sufficient evidence on the alternative means under subsection (c) of K.S.A. 21-3420 ("to inflict

bodily injury or to terrorize the victim or another") as to Butler and to Fournier. In the case of Butler, Turbeville's shooting of Butler several times would show both an intent to inflict bodily injury and to terrorize Butler, the victim. And in the case of Fournier, Turbeville's causing Butler to fall across her legs while she lay on the floor and shooting her coworker several times would show both an intent to inflict bodily injury and to terrorize another. I believe no one would question that a person would be terrorized by seeing his or her coworker shot multiple times, not knowing if he or she will be shot next.

Our Supreme Court has held that when the evidence is insufficient to show each alternative means of committing kidnapping, the conviction must be reversed. See *State v. Crane*, 260 Kan. 208, 230-234, 918 P.2d 1256 (1996). In *Crane*, the State charged Michael T. Crane with several sexual offenses, including kidnapping, involving two separate incidents. In the second incident, which occurred at a video store, Crane lifted a female store clerk off the floor and carried her away from the front of the store. The State charged Crane with kidnapping. The State alleged that Crane had taken or confined the victim "[t]o facilitate flight or the commission of any crime" under subsection (b) of K.S.A. 21-3420 or "[t]o inflict bodily injury or to terrorize the victim or another" under subsection (c) of K.S.A. 21-3420. A jury convicted Crane of kidnapping along with several other offenses.

On appeal, Crane contended that there was insufficient evidence to support the charge of kidnapping "to facilitate the commission of any crime" under K.S.A. 21-3420(b). Interestingly, Crane challenged only one of the two disjuncts under K.S.A. 21-3420(b). Crane did not challenge the disjunct "to facilitate flight" under that subsection. This indicates that each disjunct under subsection (b) can create a way to commit the offense of kidnapping. Thus, the disjuncts under subsections (b) and (c) of K.S.A. 21-3420 create multiple ways to commit the single offense of kidnapping.

The *Crane* court determined that the movement of the store clerk was incidental to the commission of the alleged crimes. As a result, the Court determined that the evidence was insufficient to support Crane's conviction of kidnapping. Citing *Timley*, 255 Kan.

286, Syl. ¶ 1, our Supreme Court reversed Crane's conviction of kidnapping because of insufficient evidence on the alternative means of "to facilitate the commission of any crime." See *Crane*, 260 Kan. at 230-34.

As a result, both the *Turbeville* and the *Crane* decisions indicate that subsections (b) and (c) of K.S.A. 21-3420 each enumerates more than one way (or means) of committing the single offense of kidnapping. Here, the trial court instructed the jury that the offense of aggravated kidnapping could be committed in two ways: (1) with the intent to terrorize the victim or (2) with the intent to terrorize another. See *Turbeville*, 235 Kan. at 997 ("Defendant complains the instructions broadened the scope of the charges alleged in the complaint by adding the alternative intents 'to terrorize another' and 'to facilitate flight' to the kidnapping charge, and the alternative intents 'to terrorize the victim or another' and 'to facilitate flight' to the aggravated kidnapping charge."). The *Turbeville* court concluded that no error had occurred because the additional alternative intents under which a jury could find Turbeville guilty were entirely supported by the evidence. 235 Kan. at 998.

Interestingly, the State omitted the "or another" language from its information. Count 1 of the State's information reads as follows: "That on or about the 2nd day of June 2009, in Crawford County, Kansas, Joshua Mitchell Clary, then and there being present did unlawfully, feloniously and intentionally take or confine, [E.H.], . . . with the intent to hold said person to inflict bodily injury or to terrorize the victim." Here, like *Turbeville*, the "or another" language was added to the instruction for kidnapping. As in *Turbeville*, the "or another" language broadened the scope of the aggravated kidnapping charge alleged in the information. But unlike *Turbeville*, the State concedes and the record supports the State's concession that it failed to present sufficient evidence that Clary confined E.H. with the intent "to terrorize another." Thus, the evidence was insufficient on the alternative means of "to terrorize another."

The crux of the majority's argument rests on its assertion that in a kidnapping or aggravated kidnapping case, an alternative means is implicated only if the jury is instructed on two or more separate

subsections under K.S.A. 21-3420. Subsections (a), (b), (c), and (d) of K.S.A. 21-3420 each contains two or more means by which the offense of kidnapping can be committed. So, under the majority's opinion, a defendant would be precluded from raising a sufficiency challenge to an alternative means if the jury had been instructed on only one separate subsection under K.S.A. 21-3420.

Under the majority's holding, for example, if the *Crane* jury had been instructed on only subsection (b) of K.S.A. 21-3420, Crane would have been precluded from challenging the "to facilitate the commission of any crime" means, even if the evidence was insufficient on that means. To endorse the majority's holding would allow the State to fail to meet its burden of proving a defendant's guilt beyond a reasonable doubt, a result which would violate a defendant's due process rights. See *Sullivan v. Louisiana,* 508 U.S. 275, 277-78, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993) ("What the factfinder must determine to return a verdict of guilty is prescribed by the Due Process Clause. The prosecution bears the burden of proving all elements of the offense charged . . . and must persuade the factfinder 'beyond a reasonable doubt' of the facts necessary to establish each of those elements."). Indeed, the majority has cited no Kansas case, nor have I found one, that would support the majority's holding.

Finally, the majority states that the inclusion of the phrase "or another" in the jury instruction was surplusage. What does the majority mean in its use of the word "surplusage"? Does it mean the inclusion of the phrase "or another" in the jury instructions was harmless? The majority also states that it is confident that the jury was not confused. Finally, the majority states that the evidence was sufficient to find Clary guilty beyond a reasonable doubt of committing aggravated kidnapping by inflicting bodily injury or by terrorizing E.H., the victim. The reasoning that the majority employs to support its holding is similar to the reasoning adopted in *State v. Johnson,* 27 Kan. App. 2d 921, 11 P.3d 67, *rev. denied* 270 Kan. 901 (2000).

In *Johnson,* the evidence showed that Mark Johnson had abducted the victim from her apartment. Johnson was later charged with kidnapping as well as several other charges for which he was

later convicted. On appeal, Johnson contended that the evidence was insufficient to support his kidnapping conviction because the State failed to present sufficient evidence on all the alternative means on which the jury had been instructed. The jury instructions had enumerated three alternative means of kidnapping: by threat, by force, or by deception. The *Johnson* court acknowledged under the *Timley* alternative means rule that "the record must contain substantial competent evidence proving all three means charged in order to uphold a conviction of kidnapping." 27 Kan. App. 2d at 924. And the *Johnson* court conceded that no evidence was presented showing that Johnson had employed deception in his taking of the victim. 27 Kan. App. 2d at 924. Nevertheless, unwilling to apply the *Timley* rule, the *Johnson* court stated the following:

"The task before the jury in this case was to determine whether Johnson was guilty of kidnapping. One cannot tell from the verdict what the basis for that verdict is; however, under the cases cited above, this court can reasonably conclude the jury picked the basis of kidnapping by threat which is supported by overwhelming evidence, rather than by means of force or deception for which there is little or no evidence. . . . We conclude, therefore, that including the term 'deception' as a means of kidnapping in the jury instructions in this case constitutes harmless error. In light of the overwhelming evidence of Johnson's guilt on the kidnapping charge, we can see no injustice done by this verdict." 27 Kan. App. 2d at 925-26.

The *Johnson* holding, which departed from the *Timley* alternative means rule, was considered and rejected in *Wright*, 290 Kan. at 206. The majority's holding would allow Clary's conviction for kidnapping to stand when the trial court instructed that the charge could be committed in two ways ([1] to terrorize the victim or [2] to terrorize another), despite insufficient evidence on the to terrorize another means. As a result, the majority's holding cannot coexist with *Timley*'s alternative means rule, requiring sufficiency of evidence to support each alternative means on which a jury is instructed. Thus, the failure of the State to present sufficient evidence on each alternative means on which the jury was instructed requires that Clary's aggravated kidnapping conviction be reversed.