NOT DESIGNATED FOR PUBLICATION

No. 119,243

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RIETER CHRISTIAN WIRTZ,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed November 1, 2019. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before GREEN, P.J., BRUNS, J., and WALKER, S.J.


PER CURIAM: Rieter Christian Wirtz appeals after a jury convicted him of attempted first-degree murder and four counts of aggravated assault arising out of an incident of workplace violence. On appeal, Wirtz contends that there was not sufficient evidence presented at trial to support the attempted first-degree murder conviction. In addition, he contends that there was insufficient evidence presented at trial to support one of the aggravated assault convictions. Viewing the evidence in a light most favorable to the State, we conclude that both convictions were supported by sufficient evidence. Thus, we affirm.

1

Bill Barr is the President of Bill Barr and Company, Inc., a distributer of animal health products. Wirtz is Barr's former stepson and oversaw information technology for the company. In 2013, Barr began preparing for retirement and started to explore options for possibly selling the company. However, when Barr learned that several of his employees might lose their jobs as part of a sale, he decided to retain ownership but hire a new general manager to handle the daily operation of the business. At the time, the company had fewer than 15 employees.

On August 27, 2013, Barr met with his employees to inform them of his decision to hire a general manager. Barr announced the creation of a company taskforce to explore information system improvements in order to meet the changing demands in the industry. Wirtz did not attend the meeting and he was not named to serve on the task force. However, Barr met with Wirtz later to give him an update. During that conversation, Wirtz expressed his concerns with the proposed changes.

On November 9, 2013, the company's office manager, Edna Peuser held a meeting with employees to discuss ideas for increasing efficiency. One of the topics discussed was changes to the company's computer system. A few days later, Peuser sought input from Wirtz regarding whether the old computer system could be updated or if a new system was needed. According to Peuser, Wirtz became upset and responded, "Why would I want to help you get rid of me?" Peuser tried to reassure Wirtz that the company did not intend to terminate any employees.

About a week later, Eric Arnold started work as the company's new general manager. The next day, on the afternoon of November 19, 2013, Wirtz began yelling at Barr near the company's copy machine. According to Barr, Wirtz was upset about

pending changes to the accounting software system. Because the confrontation was drawing the attention of other employees, Barr moved the discussion to his office.

Although Barr sought to reassure Wirtz that final decisions had not been made and that the company was not going to terminate him, Wirtz became increasingly agitated. Wirtz continued shouting and made threats towards Barr as well as Barr's wife and daughter. When Barr threatened to call the police, Wirtz shoved papers off of Barr's desk and abruptly left the office. Wirtz went to the company's kitchen and obtained a steak knife and a serrated-blade knife. He then returned to Barr's office, shut the door, and began attacking Barr with the knives. Barr yelled for help and several coworkers came into the office.

When Howard Bodine and Jerry Almburg rushed into the office, they saw Wirtz straddling Barr on the floor, repeatedly stabbing him in the abdomen, hands, and legs. Bodine used a chair to try and pin Wirtz to the floor, while Almburg attempted to pull Barr to safety. As they did so, Wirtz continued to stab Barr and swung a knife at both Bodine and Almburg. In the ensuing scuffle, Almburg was cut on the arm.

While Bodine and Almburg struggled to restrain Wirtz, two other employees—Arnold and Kevin Burns—also entered the room. Wirtz also swung a knife towards them. As the others continued their attempts to restrain Wirtz, Burns left the office, asked Peuser to call 911, and had the remaining staff gather outside the building. Eventually, Arnold, Bodine, and Almburg succeeded in restraining Wirtz and moving Barr to safety.

A few minutes later, emergency personnel arrived at the scene. Police officers arrested Wirtz, and Barr was taken by ambulance to the hospital for treatment of his numerous wounds. One laceration traversed Barr's diaphragm into his liver. He also had a partially collapsed lung with blood pooled in his chest cavity. In addition, Barr had

3

defensive wounds on both hands. As a result of the attack, Barr required surgical insertion of a chest tube to drain the blood and to help expand his lung.

The State charged Wirtz with one count of attempted first-degree murder and four counts of aggravated assault. A three-day jury trial began on July 18, 2016. At trial, the State presented the testimony of 12 witnesses and introduced 40 exhibits into evidence. The State's witnesses included Sergeant Todd George, Officer Theresa Bentch, Officer Kari Hawes, Officer Thomas Keary, Jerry Almburg, Surgeon Leslie Landau, Edna Peuser, Howard Bodine, Kevin Burns, Eric Arnold, Bill Barr, and Detective Douglas Borcherding. The exhibits admitted into evidence included photographs of Barr's injuries.

After the State rested, Wirtz testified in his own defense. Although he did not deny attacking Barr, Wirtz testified that he did not remember the events leading up to the attack. In particular, Wirtz testified that he did not remember making threats, throwing papers off Barr's desk, or leaving abruptly in anger. Wirtz also testified that he did not remember the specifics about the attack other than Barr threatening to call the police and later being restrained on the floor.

Wirtz admitted to being "frustrated" by the changes in the office. He also admitted that he remembered confronting Barr in his office because he felt "aggravated" that he had not been fully informed about potential changes to the computer system. Furthermore, Wirtz admitted to being "worried" and "aggravated" about the company undoing "all of [his] work" by replacing the computer system. Nevertheless, Wirtz claimed that he did not intend to harm Barr and that he had no plan to kill him.

After deliberation, the jury convicted Wirtz of attempted first-degree murder and four counts of aggravated assault. On October 21, 2016, the district court held a sentencing hearing and sentenced Wirtz to a controlling sentence of 298 months with a 36-month postrelease supervision term. Thereafter, he timely appealed.

4

ANALYSIS

*Attempted First-Degree Murder*

On appeal, Wirtz contends that the evidence presented to the jury at trial was not sufficient to support a conviction for attempted first-degree premeditated murder. Although Wirtz does not deny that he stabbed Barr, he argues that the evidence was insufficient to establish the requisite element of premeditation. In response, the State contends that the evidence presented at trial—as well as the reasonable inferences to be drawn from such evidence—were sufficient to establish that Wirtz' attack on Barr "was premediated by a disgruntled employee whose rage had been simmering for weeks before the attack."

When the sufficiency of the evidence is challenged, we must review the evidence in the light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). In doing so, we are not to reweigh the evidence, resolve evidentiary conflicts, or assess the credibility of witnesses. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016). Moreover, in reviewing the sufficiency of evidence, it is important to remember that a verdict may be supported by circumstantial evidence if such evidence provides a basis from which the fact-finder may reasonably infer the existence of the fact in issue. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

To establish a violation of attempted first-degree murder, the State was required to prove beyond a reasonable doubt that the attempted murder was intentional and committed with premeditation. See K.S.A. 2018 Supp. 21-5402; K.S.A. 2018 Supp. 21-5301. Here, the district court appropriately instructed the jury on the issue of premeditation as follows:

5

"Premeditation means to have thought the matter over beforehand, in other words, to have formed the design or intent to kill before the act. Although there is no specific time period for premeditation, the concept of premeditation requires more than the instantaneous, intentional act of taking another's life."

Premeditation does not necessarily mean an act that is planned, contrived, or schemed beforehand. Instead, it indicates deliberation. *State v. Kettler*, 299 Kan. 448, 466, 325 P.3d 1075 (2014); *State v. Qualls*, 297 Kan. 61, 66, 298 P.3d 311 (2013). Likewise, premeditation and deliberation may be inferred from the evidence presented at trial so long as the inferences are reasonable. *Kettler*, 299 Kan. at 467; *Qualls*, 297 Kan. at 66.

When considering whether circumstantial evidence gives rise to an inference of premeditation, the factors to be considered include: (1) the nature of the weapon used; (2) lack of provocation; (3) the defendant's conduct before and after the killing; (4) threats and declarations of the defendant before and during the occurrence; and (5) the dealing of lethal blows after the deceased was felled and rendered helpless. *State v. Carter*, 305 Kan. 139, 152, 380 P.3d 189 (2016). The use of deadly force by itself is not enough evidence of premeditation. *Qualls*, 297 Kan. at 67. Nevertheless, "the analysis of what inferences can be reasonably drawn is not driven by the number of factors present in a particular case because in some cases one factor alone may be compelling evidence of premeditation." *Keller*, 299 Kan. at 467; see *State v. Cook*, 286 Kan. 1098, 1102, 191 P.3d 294 (2008).

In this case, it does not appear that Wirtz disputes that he used deadly weapons—a steak knife and a serrated-blade knife—in his attack on Barr. Moreover, the trauma surgeon who testified at trial confirmed the potential deadliness of the knives. Specifically, the trauma surgeon testified that Barr suffered multiple stab wounds and cuts during the attack—including a laceration through his diaphragm and liver, blood in

6

his chest cavity, and a partially collapsed lung which required surgical implantation of a chest tube and monitoring in the intensive care unit at the hospital.

Furthermore, we find nothing in the record to suggest that Barr provoked the attack. Instead, we find ample evidence in the record that Wirtz instigated the threats against Barr because he did not like the proposed changes in the company. The State presented evidence to support an inference that Wirtz had been disgruntled for several weeks about changes at the company. In particular, the State presented evidence of Wirtz' growing frustration regarding the pending information system changes in the weeks leading up to the attack on Barr. Even though Wirtz claims that he does not remember the attack, he admitted to feeling aggravated by the changes prior to the attack. Indeed, Wirtz testified that the argument with Barr was due—at least in significant part—to the pending changes and his growing tired of waiting for information.

Likewise, the State presented evidence to show that on the day of the attack, Wirtz first made threats against Barr by a copying machine. After the two men went into Barr's office, Wirtz continued his threats against Barr as well as his wife and daughter. In fact, Wirtz would not calm down even when Barr told him the police would be called. Significantly, we note that Wirtz did not simply pick up the closest item he could find in the office to attack Barr in a fit of rage. Rather, the State presented evidence that Wirtz left Barr's office, went to the company's kitchen, obtained two knives, returned to Barr's office, and shut the door behind him before beginning to stab Barr.

In addition, the State presented evidence that during the attack, Barr begged for his life and reminded Wirtz that he had a heart condition. He also told Wirtz that he was on blood thinners. Still, Wirtz continued the attack even after Barr could no longer attempt to defend himself. Even after other company employees entered Barr's office in an attempt to stop the attack, Wirtz swung a knife at them. He then continued to stab and cut

7

Barr as he lay helpless on the office floor. Ultimately, Wirtz stopped stabbing and cutting Barr only after being physically restrained by the other employees.

At trial, the jury weighed the evidence presented by the State as well as the testimony presented by Wirtz. After being properly instructed on the issue of premeditation, the jury deliberated and, ultimately, determined that Wirtz was guilty of attempted first-degree premeditated murder. To reverse the jury's verdict, we would have to reweigh the evidence and make our own determinations about the credibility of the witnesses—tasks that we are not to perform when reviewing the sufficiency of the evidence.

Instead, we must consider all of the evidence—even if there is conflicting evidence—and do so in the light most favorable to the State. After doing so, we find that there was sufficient evidence presented at trial on which a rational fact-finder could find that Wirtz intentionally—and with premeditation—attempted to kill Barr by stabbing and cutting him with knives. Thus, we affirm Wirtz' attempted first-degree murder conviction.

*Aggravated Assault*

Wirtz also contends that the evidence presented to the jury at trial was not sufficient to support a conviction for aggravated assault committed against Kevin Burns. Wirtz argues that the evidence was insufficient to establish that Burns was in actual danger when he entered Barr's office during the attack. In considering this issue, we must again review the evidence—and the reasonable inferences to be drawn from such evidence—in the light most favorable to the State. *Rosa*, 304 Kan. at 432-33.

To establish that Wirtz was guilty of aggravated assault, the State was required to prove beyond a reasonable doubt that he knowingly placed Burns in "reasonable

8

apprehension of immediate bodily harm" and that he did so with "a deadly weapon." See K.S.A. 2018 Supp. 21-5412(a) and (b)(1). A review of the record reveals that Burns testified at trial that he entered Barr's office during the attack, witnessed Wirtz repeatedly stabbing Barr, and saw Wirtz wave a knife at him from a distance around 4 or 5 feet. Burns also testified that he was afraid for his safety and believed that he would be cut by the knife if he got any closer. Additionally, Burns testified that he observed the severity of Barr's injuries before leaving the office to call for help and gather the other employees outside the building.

The State also presented the corroborating testimony of the three other employees who also attempted to intervene during the attack. Each of them confirmed that Wirtz aggressively swung a knife at them. Likewise, each of them testified about the danger of the situation. Indeed, Almburg—who Wirtz also cut during the attack—testified that "the knife was a threat to all of us in that room."

Viewing this evidence in the light most favorable to the State, we find that a rational fact-finder could determine that Burns had a "reasonable apprehension of immediate bodily harm" when Wirtz swung a knife at him in Barr's office. Again, we will not succumb to the temptation of reweighing the factual determinations made by the jury. Thus, we conclude that there was sufficient evidence presented at trial to establish that Wirtz was guilty beyond a reasonable doubt of aggravated assault on Barnes.

Affirmed.